UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STACY M. HOLMQUEST, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 14-0684-CV-W-BCW-P |
| | ) |
| STEVE LARKINS, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Chillicothe Correctional Center in Chillicothe, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner's direct appeal (*State v. Holmquest*, 243 S.W.3d 444 (Mo. App. 2007)), motion for post-conviction relief, and appeal therefrom (*Holmquest v. State*, 419 S.W.3d 904 (Mo. App. 2014)) were denied. Petitioner now challenges her 2005 convictions and sentences for second-degree murder, first-degree robbery, and first-degree burglary, which were entered in the Circuit Court of Cass County, Missouri.

Petitioner raises four (4) grounds for relief: (1) trial counsel was ineffective for failing to file a timely motion for change of venue; (2) direct appeal counsel was ineffective to failing to assert that the trial court erred in failing to transfer venue; (3) trial court erred in denying her motion for judgment of acquittal due to insufficient evidence of her guilt; and (4) trial counsel was ineffective for failing to file a timely motion to suppress evidence of petitioner's statement that she wanted her grandfather "robbed and gunned." Doc. No. 1, pp. 5-9. Respondent contends that all grounds are without merit.

## FACTUAL BACKGROUND

In affirming petitioner's convictions and sentences, the Missouri Court of Appeals set forth the following facts:

> The record on appeal indicates that the victim, David Zeller, was robbed and murdered in his home in Harrisonville, Missouri, on the night of January 16, 2005. His daughter, Shirley Ann Phillips, found his body the next morning. An investigation into his death revealed that those involved included Elvis Thornton, Regis Rummans, Veronica Villanueva, and Eric Villanueva.
>
> [Petitioner] is the granddaughter of the victim, David Zeller. [Petitioner] was a friend of Veronica Villanueva. [Petitioner] first mentioned to her friend in February of 2004 that her grandfather had a safe in his house. [Petitioner] said she wanted her friend to find a couple of people to rob him.
>
> On the night of January 7, 2005, Veronica Villanueva called [petitioner] and asked her for a ride to a local McDonald's. [Petitioner] took Veronica and Eric Villanueva (Veronica's brother) and Rummans to the McDonald's. In the car, [petitioner] told Veronica, Eric, and Rummans that she wanted her grandfather robbed and "gunned." [Petitioner] said that her grandfather had twelve million dollars in a safe underneath the floor of his office. She also indicated that she would like to burglarize the home of a wealthy business owner to whom she was not related.
>
> The next day Veronica, Eric, and Rummans helped [petitioner] move. After they helped her move, they drove by the houses of the two prospective victims so that [petitioner] could show the others the locations. When they arrived at Mr. Zeller's house, [petitioner] and Veronica went inside to speak to him. [Petitioner] informed the other passengers that a light would turn on in the room where the safe could be found. While [petitioner] and Veronica were in the house, the light in the office was turned on, and Veronica tapped her foot on the floor to locate the safe. When they returned to the car, Veronica told Eric and Rummans that there was no safe in the house because she had not located it by tapping her foot on the floor. [Petitioner] insisted that the safe was there but that they would have to cut a hole in the floor to get to it. [Petitioner] also told Eric and Rummans that she would purchase handguns, ski masks, black bags, and black clothes if they needed it for the robbery.
>
> A week later on January 15 around ten o'clock in the evening, Veronica and Eric were at their house with Elvis Thornton. Eric asked Thornton to give them a ride to Harrisonville in order to rob David Zeller. Thornton agreed to give Eric a ride, and the three went to David Zeller's house in Harrisonville. When they

2

arrived at Mr. Zeller's house, Eric got out of the car and knocked on the front door. Mr. Zeller informed him that he does not open his door after dark, so Eric returned to the car and the three left.

The next night they returned. This time Eric, Veronica, Thornton, and Rummans were all in Thornton's car. Veronica dropped the others off at the house and gave Eric fifty cents to call her when they were ready to be picked up. She then went to a truck stop to wait.

Although there was no direct testimony as to what actually occurred in the house that night, the circumstantial evidence suggests that Eric, Rummans, and Thornton broke into Mr. Zeller's house, stole guns and other items, and shot him twice. One shot hit Mr. Zeller in the leg and one hit him in the back. The shot in his back was fatal. The house was placed in disarray. A hole was cut in the floor of Mr. Zeller's office. The three also stole Mr. Zeller's truck from his garage and drove it to the truck stop to meet Veronica.

After an investigation into Mr. Zeller's murder, Veronica, Eric, Rummans, and Thornton were all arrested. [Petitioner] was also arrested and charged for her involvement in the criminal enterprise. She was charged with one count of second-degree murder, one count of first-degree robbery, and one count of first-degree burglary. After hearing the above-outlined evidence, the jury returned a verdict of guilty on all counts. [Petitioner] waived jury sentencing, and the court sentenced her to life in prison for the murder count, fifteen years for the robbery count, and another fifteen years for the burglary count.

*State v. Holmquest*, 243 S.W.3d 444, 446-47 (Mo.App. 2007).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the

3

support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

**GROUNDS 1 AND 2**

Petitioner's Grounds 1 and 2 are each claims of ineffective assistance of counsel. Petitioner claims that she received ineffective assistance of trial counsel because counsel failed to file a motion for change of venue. Petitioner claims additionally that she received ineffective assistance of appellate counsel because counsel failed to assert that the trial court erred in failing to transfer venue.

In order for petitioner to successfully assert a claim for ineffective assistance of counsel, petitioner must demonstrate that her attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). This Court, moreover, may not grant habeas relief unless the state court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*,

presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

466 U.S. at 687.

The Missouri Court of Appeals addressed Ground 1 as follows:

> [Petitioner] argues that trial counsel should have sought a change of venue due to the amount of local publicity surrounding the case. She claims that she was prejudiced by trial counsel's failure to seek a change of venue in that "8 of the 12 seated jurors knew about the incident and co-defendant[s] trials before [petitioner's] trial started." "To prove ineffective assistance of counsel, . . . [a movant] must establish that (1) [her] counsel failed to exercise the skill and diligence of a reasonably competent attorney under similar circumstances, and (2) that [her] counsel's deficient performance prejudiced [her]." *Id.* "Should a movant fail to satisfy either element, the appellate court . . . need not consider the other.'" *Id.* (quoting *Slater v. State*, 147 S.W.3d 97, 101 (Mo. App. W.D. 2004)).
>
> All criminal defendants facing jury trials in counties having 75,000 or fewer inhabitants are entitled to an automatic change of venue if requested in writing within ten days of entering their initial pleas. Rule 32.03(a). Although "[i]t is reversible error for a trial judge to deny a timely filed Rule 32.03 motion for change of venue, and trial counsel might [perform] deficient[ly] by failing to file it[, d]efendants are not presumptively prejudiced . . . by trial counsel's failure to file a Rule 32.03 motion." *Moss v. State*, 10 S.W.3d 508, 513 (Mo. banc 2000). Instead, to demonstrate prejudice "'resulting from defense counsel's ineffective assistance during the jury selection process, a post-conviction movant must show that a biased venireperson ultimately served as a juror.'" *Id.* at 513 n.17 (quoting *State v. Pierce*, 927 S.W.2d 374, 377 (Mo. App. W.D. 1996)).
>
> Here, [petitioner] has failed to prove that any biased venirepersons sat on her jury. Although some of the jurors were aware of [petitioner]'s case before trial, there is "[n]o requirement . . . that 'jurors be ignorant of the facts and issues reported by the media.'" *State v. Baumruk*, 280 S.W.3d 600, 613 (Mo. banc 2009) (quoting *State v. Johns*, 34 S.W.3d 93, 107 (Mo. banc 2000)). "'In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.'" *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). "The relevant question is not whether the community remembered the case, but whether the jurors at [the defendant's] trial had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*, 467 U.S. 1025, 1035 (1984).
>
> The venire panel in [petitioner]'s case was questioned specifically about whether pretrial publicity on the case caused any of them to form fixed opinions about [petitioner]'s guilt or innocence. All panel members indicating that they

5

could not set aside their pre-formed opinions were stricken from the panel either for cause or peremptorily. Thus, none of the potentially biased panel members actually served on [petitioner]'s jury. Consequently, she cannot (and did not) demonstrate prejudice resulting from counsel's failure to seek a change of venue.

Resp. Ex. K, pp. 7-9.

In the same opinion, the Missouri Court of Appeals addressed petitioner's Ground 2:

> In her second point on appeal, [petitioner] argues that appellate counsel provided ineffective assistance by failing to raise a claim on direct appeal that the trial court plainly erred in failing to sua sponte transfer the case to a different venue.
>
> *****
>
> "'To prevail on a claim of ineffective assistance of appellate counsel, the [m]ovant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it.'" *Williams v. State*, 386 S.W.3d 750, 753 (Mo. banc 2012) (quoting *Taylor v. State*, 262 S.W.3d 231, 253 (Mo. banc 2008)). "To be entitled to relief, a movant must demonstrate 'that there is a reasonable probability the appeal's outcome would have been different.'" *Id*. (quoting *Zink v. State*, 278 S.W.3d 170, 192 (Mo. banc 2009)).
>
> To the extent that [petitioner]'s claim involves a challenge to appellate counsel's failure to raise a claim of ineffective assistance of trial counsel on direct appeal, the claim fails. Rule 29.15 "provides the exclusive procedure by which [a post-conviction movant] may seek relief in the sentencing court for the claims enumerated" therein. Rule 29.15(a). Because Rule 29.15 permits claims of ineffective assistance of counsel, such claims are "not cognizable in a direct appeal." *State v. Hamilton*, 328 S.W.3d 738, 745 n.1 (Mo. App. W.D. 2010). We will not find appellate counsel ineffective for failing to raise a claim that is not cognizable on direct appeal. *See Hudson v. State*, 248 S.W.3d 56, 59 (Mo. App. W.D. 2008).
>
> [Petitioner]'s claim that appellate counsel should have raised a claim that the trial court plainly erred in failing to sua sponte transfer the case to another venue is likewise doomed to failure. "[O]nly the defendant can request a [c]hange of [v]enue in a [c]riminal case." *State ex rel. Devlin v. Sutherland*, 196 S.W.3d 593, 595 (Mo. App. E.D. 2006) (granting a permanent writ of prohibition, prohibiting the trial judge from transferring the case to a different venue, absent any request by the defendant). If a circuit court sua sponte transfers a case to another

6

venue—even if it does so to avoid any ill effects of pretrial publicity—it acts outside the scope of its authority and in violation of a criminal defendant's rights. *Id*. "The Sixth Amendment to the United States Constitution[;] Art[icle] I, section 18(a), [of the Missouri] Constitution . . . [;] and § 541.033 RSMo., grant the defendant the right to be prosecuted in the district, or county, where the crime is alleged to have occurred." *Id*. Thus, even if appellate counsel had raised a plain error claim (asserting error in the trial court's failure to sua sponte transfer the case) on direct appeal, it would not have resulted in reversal.

Resp. Ex. K, pp. 9-11.

The decisions of the Missouri Court of Appeals are reasonable and therefore are entitled to deference under § 2254(d). Trial counsel's decision not to file a motion for change of venue can be considered a matter of strategy. *See, e.g., Dotson v. Roper*, 2013 WL 5442919, *8 (E.D. Mo. Sept. 30, 2013) (state court reasonably concluded that counsel was not ineffective because petitioner could not plead sufficient facts to show she was entitled to a change of venue). In *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987), the United States Court of Appeals for the Eighth Circuit stated that "the courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed . . . and his best judgment as to the attitudes and sympathies of judge and jury." *See also Shaw v. U.S.*, 24 F.3d 1040, 1042 (8th Cir. 1994) (trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful); *Henderson v. Norris*, 118 F.3d 1283, 1287-88 (8th Cir. 1997) (matters of trial strategy presumed correct), *cert. denied*, 522 U.S. 1129 (1998).

Further, in holding that petitioner's ineffective assistance of appellate counsel claim did not merit post-conviction relief, the Missouri Court of Appeals properly identified and applied federal law. Petitioner does not demonstrate that the state court's factual determinations regarding her ineffective assistance of appellate counsel claim were unreasonable based on the

7

record.

Because the state courts' determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Grounds 1 and 2 will be denied.

## **GROUND 3**

In Ground 3, petitioner challenges the sufficiency of the evidence presented at trial and argues that the trial court erred in overruling her motion for judgment of acquittal. The Supreme Court has explained that claims of insufficient evidence to support a verdict face "a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012). The first layer of deference is on direct appeal, where "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" *Id.* (quoting *Cavazos v. Smith,* 565 U.S. 1 (2011)). A second layer of deference then applies on habeas review, where "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id.* Rather, "[t]he federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.*

The Missouri Court of Appeals evaluated petitioner's sufficiency of the evidence challenge on direct appeal and summarized the facts adduced at trial as previously stated in the "Factual Background" section. In light of the facts, the Missouri Court of Appeals found that the evidence

8

at trial was sufficient to support petitioner's conviction:

> [Petitioner]'s first point argues that the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that she "aided or assisted" the other perpetrators in executing the criminal enterprise as defined by section 562.041. She argues that merely suggesting that the others should rob Mr. Zeller, telling them about the floor safe, and showing them the location is insufficiently specific or certain to constitute planning or encouragement of the offense. A person is deemed criminally responsible for the conduct of others when "with the purpose of promoting the commission of an offense, [she] aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Section 562.041.1(2). It is not necessary that the defendant personally commit the elements of the offense. *Barnum*, 14 S.W.3d at 591. "Mere encouragement is enough." *Id*. Encouragement is conduct that by any means approves another's criminal action. *Id*. This includes encouraging or exciting a criminal act by words, gestures, looks, or signs. *Id*.
>
> [Petitioner] argues that her conduct does not rise to the level of encouragement necessary for her to be criminally responsible for the conduct of Eric, Rummans, Veronica, and Thornton. Her argument seems to be based on the notion that she was not personally present at the time of the robbery and murder. The case of *State v. Mills*, 809 S.W.2d 1 (Mo. App. 1990), shows that one does not have to be present at the time of the actual crime to be guilty of unlawfully encouraging the crime. In *Mills*, the defendant, Mills, suggested to his friend, Vrable, that Vrable rob Mills' roommate, Brooks. *Id*. at 2. Mills told Vrable that Brooks carried a large amount of money on him, that Brooks frequently came home intoxicated and so would be "easy pickings," and suggested that Vrable hit Brooks over the head with a baseball bat. *Id*. at 3. While Mills was not present, Vrable went into Brooks' home, hit him over the head with a tire iron, and stole money from him. *Id*. at 2. Mills' encouragement occurred before the crime was executed. Mills also was not present when the crime took place. The court found the evidence sufficient to find him guilty under an accomplice liability theory. *Id*. at 3. The court found that Mills had provided Vrable "with information regarding the identity and residence of the victim, the victim's possession of a large amount of cash, and the victim's tendency to be drunk and thus easily robbed" and had also "suggested the method and means for carrying out the robbery, by hitting the victim over the head with a bat, and suggested a second meeting to further plan the robbery." *Id*.
>
> Similarly, although [petitioner] was not present when the robbery of Mr. Zeller's residence took place, she had suggested the criminal enterprise to those who carried it out, had told them of a floor safe and indicated in which room it could be found, indicated that she wanted her grandfather robbed and "gunned," and had offered to buy things such as guns and black clothing in order to aid them

9

> in committing the robbery. She made the suggestions about robbing Mr. Zeller on more than one occasion and showed them the location of the home in order to facilitate the robbery. A reasonable jury could conclude beyond a reasonable doubt that [petitioner] aided or encouraged Eric, Rummans, Thornton, and Veronica to carry out the criminal enterprise.
>
> [Petitioner] also suggests that there was insufficient evidence of her mental state. She points to language contained in *State v. Neal*, 14 S.W.3d 236, 239 (Mo. App. 2000), that "the conduct of the person actually committing the offense may be imputed to the defendant [but] the mental state cannot be similarly imputed." Recently this court, in *State v. Smith*, 229 S.W.3d 85, 94–95 (Mo. App. 2007), rejected this concept. We said in *Smith* that, in cases other than that of murder in the first degree, the only showing required as to the culpable mental state of an accomplice is that, in aiding the principal in the commission of the offense, he acted with the purpose to promote the conduct of the principal that constituted the offense for which the accomplice is being held liable. *Id.* at 95.
>
> These principles are consistent with the plain language of section 562.041 and MAI–CR3d 304.04. The prosecution must prove only that the defendant had a purpose to promote the commission of the offense. Section 562.041.1(2). It is not necessary that the prosecution prove an additional or separate mental state. There certainly was sufficient evidence in the record here from which a reasonable jury could conclude that [petitioner] had a purpose to promote the commission of the offenses.

*State v. Holmquest*, 243 S.W.3d 444, 447-47 (Mo. App. 2007).

The Missouri Court of Appeals' resolution of petitioner's claim that there was sufficient evidence to convict her was not based on an unreasonable determination of the facts or on a misapplication of federal constitutional law. *See* 28 U.S.C. 2254(d)(1) and (2); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence in criminal trials is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). "In applying this standard, '[t]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited. . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must

10

defer to that conclusion." *Sexton v. Kemna*, 278 F.3d 808, 814 (8th Cir. 2002) (citing *Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994)), *cert. denied*, 537 U.S. 886 (2002).

In the present case, a jury could have concluded beyond a reasonable doubt, based on the evidence, that petitioner aided or assisted in the commission of the burglary and murder. Although it is possible to conclude from the evidence that petitioner did not aid or assist in the commission of the crimes, this Court may not conduct its own assessment of the evidence. *United States v. Anderson*, 78 F.3d 420, 422 (8th Cir. 1996) ( "[t]he evidence need not exclude every reasonable hypothesis of innocence. . . we may not disturb the conviction if the evidence rationally supports two conflicting hypotheses."). The appellate court's ruling did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* U.S.C. § 2254(d)(1) and (2), and as such, Ground 3 will be denied.

## GROUND 4

In Ground 4, petitioner claims that trial counsel was ineffective for failing to file a timely motion to suppress evidence of petitioner's statement that she wanted her grandfather "robbed and gunned." Respondent contends that petitioner's Ground 4 is procedurally barred.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied*, 516 U.S. 1056 (1996). "In order to present a habeas claim to the state court, a prisoner must 'fairly represent' not only the facts, but also the substance of his federal habeas corpus claim." *Barrett v. Acevedo*, 169 F.3d 1155 (8th Cir. 1999) (citing *Abdullah v. Groose*, 75

11

F.3d 408, 411 (8th Cir. 1996), *cert. denied*, 517 U.S. 1215 (1996)), *cert. denied*, 528 U.S. 846 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." *Sloan* at 1381.

Petitioner raised Ground 4 in her *pro se* Rule 29.15 motion, which was incorporated into her amended Rule 29.15 motion. Def. Ex. E; Def. Ex. F. Petitioner failed, however, to raise Ground 4 on appeal from the denial of her Rule 29.15 motion. As such, Ground 4 is procedurally defaulted. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), *cert. denied*, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner also has failed to show that a fundamental miscarriage of justice will result if her defaulted claims are not considered. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that she is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), *cert. denied*, 549 U.S. 1036 (2006). As a result, Ground 4 will be denied.

## **A CERTIFICATE OF APPEALABILITY WILL BE DENIED**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy

12

this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

    /s/ Brian C. Wimes_____
BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: <u>November 13, 2014</u>.